IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

JOSHUA HARRIS                                                                                         PLAINTIFF

VS.                                                             CIVIL ACTION NO.  5:04cv98-JCS

GABRIEL WALKER, ET AL.                                         DEFENDANTS

MEMORANDUM OPINION AND ORDER

     The Court held an omnibus hearing[1] in this matter, at which time it conferred with the plaintiff  and counsel for the defendants in this suit founded upon 42 U.S.C. § 1983.  At that hearing, the parties consented to have a United States Magistrate Judge conduct any an all further proceedings in the case and order the entry of final judgment, and the District Judge subsequently entered an order of reference.  28 U.S.C. 636(c); Fed. R. Civ. P. 73.   Harris is proceeding in this matter *in forma pauperis*.  28 U.S.C. § 1915(e).  Subsequent to the Omnibus Hearing held in this matter, in two separate orders the Court ordered the Plaintiff to show cause why this matter should not be dismissed for failure to exhaust administrative remedies.  See Orders at docket entry numbers 18 and 22.  In two separate responses, the Plaintiff described his attempts to exhaust administrative remedies.  See Responses at docket entry numbers 20 and 23.  In an abundance of caution, the Court allowed the case to go forward, stating that "the Court declines at this time to dismiss the case based upon the failure to exhaust administrative remedies."  Order at docket entry number 25.  The Defendants have now filed a motion for summary judgment (docket entry number 29), to which the Plaintiff did not respond, and the Court turns to consider the motion.

I.  Plaintiff's Claims

     Plaintiff claims that the defendants violated his Eighth Amendment rights during his time

---

[1] See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

of incarceration as a convicted prisoner at the Wilkinson County Correctional Facility("WCCF"), located in Woodville, Mississippi.  In his complaint and according to his testimony at the omnibus hearing, he alleges that the defendants, Gabriel Walker, Frank Womack, Virginia Slack, and Calvin Collins, all employees of WCCF, violated his constitutional rights when they failed to protect him from attack by a fellow inmate and subsequently showed deliberate indifference to his serious medical needs.  In particular, at the Omnibus Hearing, and while under oath, the Plaintiff testified that he was stabbed by a cell mate on February 1, 2003, after informing his unit manager, Calvin Collins, that his cell mate had threatened him.  In his complaint, he alleges that he was forced to walk to the infirmary, and that medical personnel were not called to provide treatment at his cell.  Complaint at 4(d). During the Omnibus Hearing, however, Plaintiff testified that defendant Slack called for medical personnel immediately, and that medical personnel met him halfway between his cell and the infirmary with a wheel chair so that he did not have to walk the entire way to the infirmary.   Plaintiff presents no claims regarding his treatment by medical personnel once he arrived at the infirmary, nor does he present claims regarding his medical care during his stay at a local hospital.[2]  He does complain, however, that upon his return to WCCF on or about February 7, 2003, and after a one week stay in WCCF's infirmary, that the temperature of the pod where he was housed was "very cold and officials denied him adequate treatment." Complaint at 4(e).  At the Omnibus Hearing, the Plaintiff clarified his allegations by stating that the temperature in the pod was too cold, despite having a blanket, and although he was seen by

---

[2]While at the local hospital, Plaintiff underwent surgery, during which the doctor removed one of Plaintiff's kidneys.  Upon questioning by the court during the Omnibus Hearing, the Plaintiff agreed that no doctor had told him that his walk from his cell to where he was met with a wheel chair had contributed to the loss of his kidney, nor would his condition have been different if he had not had to make the walk "halfway" to the infirmary at which point WCCF medical personnel met him with the wheel chair.

medical personnel during that time and was fed, he was not fed enough. Plaintiff filed his grievance regarding the incident and his subsequent medical care with the Administrative Remedies Program on April 7, 2003.

Subsequent to the Omnibus hearing, and upon further evaluation of the Plaintiff's complaint, the Court issued two Orders to Show Cause why the action should not be dismissed for Plaintiff's failure to exhaust administrative remedies.[3] In these orders, the Court ordered the Plaintiff to provide documentation, if any, showing that he was unable to exhaust his administrative remedies with regard to these claims within the thirty-day time limit imposed by the Administrative Remedies Program. The Court also ordered the Plaintiff to provide a statement indicating the time period he was hospitalized and housed in the infirmary, and whether the Administrative Remedy Program was available to him at that time.

In his first response to these Orders, the Plaintiff stated, as follows:

Plaintiff understands all aspects of 42 U.S.C. § 1997e. I argue not the concept of this statue [sic], but only argue, that plaintiff did everything within his personal power to complete all aspects of this statue [sic]. I also argue that such completion of administrative remedies was done as soon as plaintiff was able to complete them physical [sic], emotionaly [sic], as well as mentally. . . .

. . .

(1). . .Through all the drama plaintiff endured, he reasonably needed ample enough time to be healed physically. Thirty (30) days from the time of this dramastic [sic] life threatening incident to be considered time-barred? Plaintiff states reasonably this is unjust considering his physical predicoment [sic]. Plaintiff was unable to do anything in his predicoment [sic] physically. No less write a thousand worded

---

[3]At the time of the Omnibus Hearing, the Defendants had answered the complaint. See docket entry number 10. In their Answer, *inter alia*, the Defendants generally denied the Plaintiff's allegations regarding the Administrative Remedy Program. The Defendants also asserted all defenses afforded under the PLRA, "including, but not limited to, those defenses set forth in 42 U.S.C. § 1997." Id., Answer at 4. They also invoked and asserted "all defenses afforded under the Administrative Remedies Program." Id.

> complaint!
> (2) Not only physically was plaintiff unable. The incident was clearly dramastic [sic] physically. But mentally it was more than a shock. Plaintiff was in so much pain mentally, it wasint [sic] possible to meerly [sic] see straight, no less concentrate on a written complaint! It was impossible to complete such remedies any sooner.

Docket entry number 20, Response to Court Order.

The Plaintiff stated further in his response to the second Order to Show Cause that he was treated at Fields Memorial Hospital in Centreville until February 11, 2003. When he returned to WCCF, he stayed in the facility's infirmary until February 18, 2003. At that time, he was released from medical supervision and was placed in the lock down unit of the facility. Docket entry number 23, Response to Court Order. In this response, he also states that he "wasn't in a mental state of mind to conduct myself for neccessary [sic] proceedures [sic] concerning filing at [sic] complaint at this time. So on April 7, 2003, after getting over my mental and physical injuries I filed for Administrative Remedy." Id.

After considering these responses, and in an abundance of caution based upon Days v. Johnson, 322 F.3d 863 (5th Cir. 2003), the Court declined to dismiss the action at that time based upon the plaintiff's failure to exhaust administrative remedies.[4] The Defendants subsequently filed this Motion for Summary Judgment arguing for dismissal of this case based, among other reasons, upon the Plaintiff's failure to exhaust administrative remedies. Because the Fifth Circuit in Days specifically stated that its "holding does not preclude a revisiting of this issue [exhaustion of administrative remedies] based upon a response by the defendants," the Court finds that the issue

---

[4]In Days, the Fifth Circuit held that "administrative remedies are deemed unavailable when (1) an inmate's untimely filing of a grievance is because of a physical injury and (2) the grievance system rejects the inmate's subsequent attempt to exhaust his remedies based on the untimely filing of the grievance." Days, 322 F.3d at 867.

of Plaintiff's admitted failure to exhaust administrative remedies must be re-evaluated at this juncture.

## II.  Applicable Standards

Title 42 U.S.C. § 1997e of the Prison Litigation Reform Act (PLRA), provides in clear language that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   Section 1997e conclusively requires a state prisoner to exhaust available administrative remedies before filing a section 1983 suit and precludes him from filing suit while the administrative complaint is pending. Wendall v. Asher, 162 F.3d 887, 890 (5th Cir.1998);  see also Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir.1998)("By choosing to file and pursue his suit prior to exhausting administrative remedies as required, Underwood sought relief to which he was not entitled - -that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures.").  The United States Supreme Court has  held that the PLRA's exhaustion requirement is mandatory and applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. See Porter v. Nussle, 122 S. Ct. 983 (2002); see also Booth v. Churner, 532 U.S. 731, 739 (2001).  Furthermore, as the Supreme Court has recently found the PLRA mandates that prisoners "properly" exhaust their claims by complying with the facility's administrative rules and procedures.  Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006).

The Administrative Remedy Program within the Mississippi Department of Corrections (MDOC) is a three step process.  Inmates initially submit their grievance to the division head or adjudicator in writing, within thirty days after an incident has occurred.  Inmates receive a step one

response from the appropriate official, which they may appeal to the Superintendent or Warden of the institution, who will issue a step two response.  If still aggrieved, the inmate may appeal to the Commissioner of MDOC, where a step three response is issued.  At this time, the program administrator will issue to the inmate a certificate stating that he has completed the exhaustion of his administrative remedies.  No more than ninety days from initiation to completion of the process shall elapse, unless an extension has been granted.  <u>Mississippi Department of Corrections Inmate Handbook</u> (Rev.1999), Chapter VII, pg. 39-42.

      Harris filed his Administrative Remedies Program grievance on April 7, 2003, over thirty days beyond the thirty-day deadline. Plaintiff alleges that although the incident occurred on February 1, and he was in WCCF's infirmary until February 18, he was not physically, mentally, or emotionally able to file a grievance until April 7, 2003. Defendants have presented medical records showing that upon the Plaintiff's return to WCCF on February 7, he had access to all materials necessary for filing a grievance.  Exhibit A to Defendants' Motion.  Furthermore, the Defendants note that upon his discharge from the hospital, the physicians cleared plaintiff for light activity with instructions to shower and bathe himself.  <u>Id.</u>  The Defendants state that two days after he returned to the Facility, the Plaintiff was up, walking around, and requesting permission to make phone calls.  <u>Id.</u>  The Defendants also note that the medical records show that he was always able to sit up and eat from a tray, and that as early as February 23, it was documented that he had returned to his cell and was attending recreation and showering regularly.  <u>Id.</u>

      Even when the Court equitably tolls the filing period for his grievance to begin running on February 18, the Plaintiff's grievance was untimely.  It is clear from the uncontroverted medical records that Harris was ambulatory and able to walk within days of his surgery and upon his return

to the Facility.  There is no evidence, as in Days, that his injuries affected his physical ability to write.[5]  Furthermore, Days, does not allow for tolling or excuse prompt filing of prison administrative remedies because of mental or emotional injury.  Accordingly, as Harris failed to exhaust administratively his claims according to MDOC procedure due to his filing his grievance beyond the thirty-day deadline, he is barred from asserting them in this action.  See Woodford, 126 S. Ct. at 2386 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").  Accordingly, the undersigned finds that summary judgment should be granted on this basis, and the Plaintiff's claims against the defendants should be dismissed.

Because the Court has granted summary judgment on this basis, it will decline to address the Defendants' other bases for dismissal.

### III.  Conclusion

For the reasons stated above, the Court finds that summary judgment should be granted in favor of the Defendants.  Accordingly, this case is dismissed without prejudice.  A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

SO ORDERED, this the   18th    day of   September  , 2006.

    S/ James C. Sumner
   UNITED STATES MAGISTRATE JUDGE

---

[5] In Days, the prisoner alleged that "at the time of the accident, he could not write because his writing hand had broken and that, when his hand healed, he submitted a grievance."  Days, 322 F.3d at 865.